[No. B007751. Second Dist., Div. Four. Dec. 13, 1985.]

THE PEOPLE, Plaintiff and Appellant, v.
TIMOTHY PATRICK HOBAN et al., Defendants and Respondents.

COUNSEL

Ira Reiner, District Attorney, Harry B. Sondheim and Dirk L. Hudson, Deputy District Attorneys, for Plaintiff and Appellant.

Dennis A. Fisher and Carl Jones for Defendants and Respondents.

OPINION

**KINGSLEY, Acting P. J.**—The People appeal an order of the superior court dismissing various counts and allegations of the information lodged against the defendants (Pen. Code, § 995). We reverse.

### FACTS

The defendants were charged with the cocaine-related kidnappings and murders of Jon Cassanelli, Steven Migliori, and Virginia Openshaw Rosenberg. The defendants moved at the preliminary hearing to dismiss the com-

plaints against them. This motion was denied by the magistrate. The superior court, however, pursuant to a motion under Penal Code section 995, dismissed as to defendant Hoban the charges of murdering and kidnapping Steven Migliori (counts II and V of the information) and of murdering and kidnapping Virginia Openshaw Rosenberg (counts III and VI). The court also struck the special circumstance allegations as to both defendants that the murder of Jon Cassanelli (count I) had involved the infliction of torture (Pen. Code, § 190.2, subd. (a)(18)) and had occurred in the course of a kidnapping (Pen. Code, § 190.2, subd. (a)(17)). The People appeal the partial setting aside of the information in those particulars and we reverse.

## I

"An information will not be set aside if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. (*Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197].) 'On a motion to set aside an information, the question of guilt or innocence of the defendant is not before the court, nor does the issue concern the quantum of evidence necessary to sustain a judgment of conviction. The court is only to determine whether the magistrate, acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendant had participated.' (*People* v. *Jablon* (1957) 153 Cal.App.2d 456, 459 [314 P.2d 824].) Neither the trial court in a section 995 proceeding (*People* v. *Landry* (1964) 230 Cal.App.2d 775, 779 [41 Cal.Rptr. 202]; *Hacker* v. *Superior Court* (1968) 268 Cal.App.2d 387, 392-393 [73 Cal.Rptr. 907]) nor a reviewing court on appeal therefrom (*Rideout* v. *Superior Court, supra,* 67 Cal.2d at p. 474; *People* v. *Cirilli* (1968) 265 Cal.App.2d 607, 612-613 [71 Cal.Rptr. 604]) may substitute its judgment as to the weight of the evidence for that of the committing magistrate. 'Although the magistrate, in reaching his decision, may weigh the evidence, resolve conflicts, and give or withhold credence to witnesses, such a balancing of the evidence is not within the powers of a tribunal reviewing the magistrate's order.' (*Perry* v. *Superior Court* (1962) 57 Cal.2d 276, 283-284 [19 Cal.Rptr. 1, 368 P.2d 529].) Every legitimate inference that may be drawn from the evidence must be drawn in favor of the information. (*Rideout* v. *Superior Court, supra,* 64 Cal.2d 474.)" (*People* v. *Hall* (1971) 3 Cal.3d 992, 996 [92 Cal.Rptr. 304, 479 P.2d 664].)

"Our function, then, is simply to determine if there is any substantial evidence in support of the *magistrate's* conclusion, not that of the *superior court.*" (*People* v. *Stamper* (1980) 106 Cal.App.3d 301, 304 [164 Cal.Rptr. 861], italics in original.)

### The Migliori-Rosenberg Killing

On a section 995 motion, the superior court dismissed the information as to defendant Hoban regarding the kidnapping and murder of Steven Migliori and Virginia Openshaw Rosenberg on the grounds of insufficient evidence. Rosenberg and Migliori were found lying together below an embankment off Placentia Canyon Road with gunshot wounds to their heads. Both subsequently died. The murder charges were not dismissed as to defendant Zimmer, however—the court concluding that there was sufficient evidence of his involvement in the killings. The People appeal this ruling, contending that the superior court erred when it determined that there was insufficient evidence of defendant Hoban's participation.

The evidence linking defendant Hoban to the Migliori-Rosenberg murders is largely circumstantial and inferential. The primary evidence is that the killings are nearly identical to that of the murder of Jon Cassanelli—a murder in which an eyewitness named defendant Hoban as the shooter (although defendant Zimmer was also present). In both the Cassanelli, and Migliori-Rosenberg killings the victims were driven at night to a remote canyon—evidently in their own cars—and shot in the back of the head. Cassanelli was made to strip and was handcuffed before he was shot. Migliori and Rosenberg were both found nude and their hands had been tied with duct tape. Defendant Hoban talked about the Migliori-Rosenberg killings after they had been committed, and thus clearly had knowledge of them, although he indicated that defendant Zimmer was responsible. In addition, Rosenberg and Migliori were killed with a handgun in defendant Hoban's possession: a .38 caliber Browning. When not in use, this gun was kept, along with the .41. magnum used in the Cassanelli killing, in a security deposit box in defendant Hoban's name—although defendant Zimmer was allowed access to this box as well. Finally, the magistrate could look to the fact that the Migliori-Rosenberg murders followed just two days after the Cassanelli killing (in which both defendants were involved) and could take notice of the difficulty one man alone would have had in transporting, tying up, and shooting two presumably unwilling victims. None of this evidence clearly establishes defendant Hoban's involvement in the murders, nor does it rule out the possibility that defendant Zimmer acted alone. It is sufficient, however, to raise a reasonable suspicion that defendant Hoban was involved. Consequently, we conclude that the superior court erred when it dismissed counts II, III, V and VI of the information against defendant Hoban.

### The Cassanelli Kidnapping Special Circumstance

The superior court also concluded that there was insufficient evidence to support a kidnapping special circumstance allegation as to both

defendants (Pen. Code, § 190.2, subd. (a)(17)) in the murder of Jon Cassanelli. Curiously, however, the court rejected a motion to strike kidnapping as a substantive count. In explaining this discrepancy, the court stated:

"My understanding of the law is that for the kidnapping as a special circumstance will stand to elevate what would normally be a first degree murder punishable by imprisonment to the much more serious special circumstance subject, one, to possible death, that you have a higher standard.

"It seems to me its [*sic*] conceivable a court could rule there was not a kidnapping for purposes of a special circumstance, but there was for a substantive count."

This is clearly erroneous as the kidnapping special circumstance allegation (Pen. Code, § 190.2, subd. (a)(17)) defines kidnapping as being a violation of Penal Code sections 207 and 209—the statutes establishing the substantive offense. ■ The facts that make an offense kidnapping for a substantive count also make it one for a special circumstance allegation. Nor is the quantum of proof necessary to establish the offenses any different. (*Ario* v. *Superior Court* (1981) 124 Cal.App.3d 285, 289 [177 Cal.Rptr. 265].) Thus, there is no "higher standard" for the special circumstance allegation. The only difference between it and the substantive offense is that to establish the special circumstance allegation, the court must conclude that the murder occurred in the course of the kidnapping, and not that the kidnapping was merely incidental to the intended murder. (*People* v. *Green* (1980) 27 Cal.3d 1, 59-62 [164 Cal.Rptr. 1, 609 P.2d 468].)

■ The evidence, however, is clearly sufficient to support the magistrate's finding that the murder occurred during the course of the kidnapping. ■ The evidentiary test to be applied to the appellate review of a ruling on a special circumstance allegation is whether there is "some rational ground for assuming the possibility" that the special circumstance is true. (*Engert* v. *Superior Court* (1980) 103 Cal.App.3d 688, 692 [163 Cal.Rptr. 267]; *Ghent* v. *Superior Court* (1979) 90 Cal.App.3d 944, 955 [153 Cal.Rptr. 720].) It cannot be said that there is no rational ground for assuming that the defendants had not decided to murder Jon Cassanelli until after they had kidnapped him. The prosecution's chief witness, who was driven to the murder site along with Cassanelli, stated that the defendants had previously discussed scaring Cassanelli, and although they had mentioned killing him, she did not think they were going to do it. Moreover, the fact that the defendants took along a witness to the murder, who was the victim's girl friend, tends to show that they had not decided to kill Cassanelli at the time he was abducted. When the evidence of the defendant's intent is ambiguous, the inference must be drawn in favor of the magistrate's ruling.

(*Ario* v. *Superior Court, supra,* 124 Cal.App.3d 285, 289-290; *Jones* v. *Superior Court* (1981) 123 Cal.App.3d 160, 173-174 [176 Cal.Rptr. 430].) The superior court erred, therefore, in striking the kidnapping circumstance allegation as to both defendants in the murder of Jon Cassanelli (count I).

### The Torture Special Circumstance

The superior court also struck the special circumstance allegation that the murder of Jon Cassanelli (count I) involved the infliction of torture (Pen. Code, § 190.2, subd. (a)(18)). The evidence indicated that while Cassanelli was being driven to the murder site, defendant Hoban fired a .25 caliber Barretta at Cassanelli's legs when he refused to "shut up" and "stop whinning." After firing this shot, which appears to have missed, defendant Hoban remarked that Cassanelli didn't sound like he was in enough pain. He then had Cassanelli's girlfriend feel the victim's leg for a wound. Finding none, defendant Hoban again shot at Cassanelli's leg, this time wounding him. The superior court, however, did not believe this amounted to torture and struck the torture special circumstance allegation on the grounds that this was only a single act and that there was insufficient evidence that the victim suffered extreme pain.

Neither rationale is adequate to overturn the magistrate's contrary ruling. While neither the Legislature nor the courts have conclusively defined "torture," there is no requirement that it involve multiple acts or consist of the conduct commonly thought of as torture, i.e., whipping, beatings, chainings, and so forth. To constitute torture, the defendants need only have inflicted extreme pain on their victim with the intent to inflict such pain for personal gain or satisfaction. (*Ortega* v. *Superior Court* (1982) 135 Cal.App.3d 244, 257-285 [185 Cal.Rptr. 297]; *People* v. *Wiley* (1976) 18 Cal.3d 162, 171-173 [133 Cal.Rptr. 135, 554 P.2d 881].) Single actions designed to cause pain have been held to be sufficient acts of torture. (See *Engert* v. *Superior Court, supra,* 103 Cal.App.3d 688, 692, where the insertion of a hammer handle into the anus of the victim was found to be torture.) Nor can it be said that there is insufficient evidence in this case that the victim suffered extreme pain from the wound. The superior court itself took notice of the severe pain a gunshot wound to the leg would cause, but disregarded it as there was no testimony from the witness that the victim was actually in pain. The mere absence of testimony concerning the victim's reaction to his wound, however, is not sufficient to set aside the finding of the magistrate. If such were the case, few torture-murder allegations could ever be brought, as the victim is hardly in a position to testify against his tormentors. It is not the function of the superior court to substitute its judgment as to the weight of the evidence for that of the magistrate. Every legitimate inference that may be drawn from the evi-

dence must be drawn in favor of the magistrate's ruling. (*Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197].) ▉ The bare physical facts of the case support a finding that the victim suffered extreme pain. Consequently, the superior court erred when it struck the torture special circumstance allegation for the murder of Jon Cassanelli.

▉ The defendants contend, however, that the torture special circumstance allegation should be disallowed as the language of the section requires that the murder "involved" the infliction of torture (Pen. Code, § 190.2, subd. (a)(18)). Defendants interpret this to mean that the acts of torture must either be the same as, or occur simultaneously with, the acts that caused the victim's death. As the act of torture in this case occurred quite some time before the victim was killed and did not result in his death, defendants contend that they are not liable under section 190.2.

We do not accept such a narrow reading of the section. Defendants are correct in noting that for torture to elevate a killing to the substantive offense of first degree murder under Penal Code section 189 the death must have been caused by torture. (*People* v. *Talamantez* (1985) 169 Cal.App.3d 443, 455-456 [215 Cal.Rptr. 542].) However, that section of the Penal Code requires that the murder be "perpetrated by . . . torture." This is considerably narrower than the "involved torture" language of section 190.2, subdivision (a)(18) and gives rise to the inference that if the electorate had intended such a construction, it could easily have adopted the "perpetrated by" formulation. Rather, the "involved torture" language appears to refer to a longer period of time and encompasses torture that precedes the actual act of killing. We therefore see no obstacle in holding the defendants accountable under the torture special circumstance.

## II

At oral argument, counsel for defendant Zimmer indicated that during the pendency of this action, the charges that his client was involved in the Migliori-Rosenberg and Cassanelli killings have been brought to trial. While acquitted of the murders of Migliori and Rosenberg, defendant Zimmer was convicted of murdering and kidnapping Jon Cassanelli. Counsel thereupon raised additional arguments not briefed by the parties contesting the validity of any further proceedings.

Defendant Zimmer contends that the People are barred in the first place from appealing the dismissal of the special circumstance allegations.

▉ Counsel was unable to cite a single case supporting this proposition, and with good reason. Penal Code section 1238 specifies that the People

may appeal "an order setting aside the indictment, information or complaint." It is clearly recognized that a special circumstance allegation may be contested by a motion under Penal Code section 995 and that the defendant may appeal the denial of this motion (*Ghent* v. *Superior Court* (1979) 90 Cal.App.3d 944, 954-955 [153 Cal.Rptr. 720]; *Allen* v. *Superior Court* (1980) 113 Cal.App.3d 42, 48 fn. 5 [169 Cal.Rptr. 608]). We see no reason, therefore, why the People should not be given equal opportunity, especially as the appeal is specifically authorized by section 1238.

■ Equally lacking in merit is defendant's contention that trial on the special circumstance allegations is now barred by double jeopardy. Defendant has not yet been put in jeopardy once for these offenses. The special circumstances that the murder occurred in the course of a kidnapping or that it involved torture are not necessarily included in the offenses of murder or kidnapping and thus do not subject the defendant to double jeopardy. (See Pen. Code, § 1023; *In re Dennis B.* (1976) 18 Cal.3d 687, 691 [135 Cal.Rptr. 82, 557 P.2d 514].) Accordingly, at their discretion, the People may seek to try defendant Zimmer on the special circumstance allegations.

The order is reversed.

Arguelles, J., and Fields, J.,* concurred.

The petition of respondent Hoban for review by the Supreme Court was denied March 27, 1986.

---

*Assigned by the Chairperson of the Judicial Council.