[No. A125490. First Dist., Div. Two. Apr. 30, 2010.]

THE PEOPLE, Plaintiff and Appellant, v.
LAVIDA MARIE DAVIS, Defendant and Respondent.

**COUNSEL**

Robert J. Kochly, District Attorney, and Doug MacMaster, Deputy District Attorney, for Plaintiff and Appellant.

Robin Lipetzky, Acting Public Defender, under appointment by the Court of Appeal, and Jonathan Laba, Deputy Public Defender, for Defendant and Respondent.

## OPINION

**RICHMAN, J.**—Penal Code section 790, subdivision (b) (section 790(b)), allows for two or more counts of murder committed in different counties to be tried together so long as the charged murders are " 'connected together in their commission.' " Here, a Contra Costa County grand jury returned an indictment charging defendant Lavida Marie Davis with two counts of murder in connection with the 2004 and 2006 deaths of her infant sons, the first of whom died in Alameda County, the other in Contra Costa County. Defendant moved to set aside the special venue allegation—justifying a single trial in Contra Costa County—arguing that *Alcala v. Superior Court* (2008) 43 Cal.4th 1205 [78 Cal.Rptr.3d 272, 185 P.3d 708] (*Alcala*) held that section 790(b) is intended to allow a single trial only of serial killers. The trial court agreed, and granted the motion. We disagree, and reverse.

## BACKGROUND

The Grand Jury of Contra Costa County returned an indictment by which defendant was charged with the murder of her 46-day-old son Darion Lee Johnson in September 2006 in Contra Costa County, and with the murder of her 22-day-old son Emmanuel Lee Beals, Jr., in February 2004 in Alameda County. The indictment included a multiple-murder special-circumstance allegation pursuant to Penal Code section 190.2, subdivision (a)(3).[1] And it also included a special venue allegation based upon section 790(b), which provides in pertinent part: "If a defendant is charged with a special circumstance pursuant to paragraph (3) of subdivision (a) of Section 190.2, the jurisdiction for any charged murder . . . shall be in any county that has jurisdiction pursuant to subdivision (a) for one or more of the murders charged in a single complaint or indictment as long as the charged murders are 'connected together in their commission,' as that phrase is used in Section 954, and subject to a hearing in the jurisdiction where the prosecution is attempting to consolidate the charged murders. If the charged murders are not joined or consolidated, the murder that was charged outside of the county that has jurisdiction pursuant to subdivision (a) shall be returned to that county."[2]

---

[1] Statutory references are to the Penal Code.

[2] Subdivision (a) of section 790 provides in pertinent part: "The jurisdiction of a criminal action for murder or manslaughter is in the county where the fatal injury was inflicted or in the county in which the injured party died or in the county in which his or her body was found. . . . When the fatal injury was inflicted and the injured person died or his or her body was found within five hundred yards of the boundary of two or more counties, jurisdiction is in either county."

Section 954 provides in pertinent part: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts . . . ."

Defendant moved to set aside the special venue allegation pursuant to section 995, fundamentally arguing that section 790(b) is directed at trial of serial killers, and that defendant was not one. The trial court agreed the limited construction of section 790(b) defendant urged was required by *Alcala*, and concluded that defendant did not qualify as a serial killer: "I think in reading and rereading *Alcala* I keep coming back to footnote number 7 which discloses the real basis for 790(b) which is . . . a focus on serial killers who go on, quote, brutal killing rampages across county lines. And the need to consolidate those cases into a single trial to alleviate unfairness to the victims' families, to the witnesses who would testify, to the court in terms of costs and things like that. [¶] I don't see that here. [¶] . . . [¶]

". . . [F]rom my reading of *Alcala* and its interpretation of 790(b), I don't find that this case falls within the ambit as discussed in *Alcala*. [¶] It seems to be a very fact-based issue. And here I guess the fact-based issue is whether or not Ms. Davis qualifies as what has been denoted a serial killer for purposes of *Alcala* such as 790(b) would apply to her and that the Alameda County case would be tried here in Contra Costa. It does not appear to me that she fits within that ambit. [¶] . . . I am going to reverse the ruling of the Grand Jury and find that there is a lack of 790(b) jurisdiction."

The trial court ordered that charges relating to the death of Emmanuel Lee Beals, Jr. "be returned to Alameda County." The People filed a timely appeal.

## DISCUSSION

■ "[B]ecause consolidation or joinder of charged offenses ordinarily promotes efficiency, that is the course of action preferred by the law." (*Alcala, supra*, 43 Cal.4th 1205, 1220.) It is true that footnote 7 in *Alcala* did quote an Assembly committee report to show that a purpose of section 790(b) was to make it easier to have a single trial for " ' "Serial killers who go on brutal killing rampages . . . without consideration of county lines . . . ." ' " (*Id.*, at p. 1215, fn. 7.)[3] But there is no basis for concluding that the statute's

[3] The full text of footnote 7 is as follows: "A June 23, 1998, report by the Assembly Committee on Public Safety sets forth the purpose of the bill: 'According to the author, "Serial killers who go on brutal killing rampages do so without consideration of county lines. However, under current law, if a serial killer commits murder in more than one county, he must be tried separately in each jurisdiction. This results in astronomical and unnecessary costs for both prosecutors and defendants. In addition to the waste of public resources, it is unfair to victims' families who must testify repeatedly about the same crime in different trials. [¶] Senate Bill 469 would allow for the consolidation of murder charges into a single trial for serial killers who are charged with murder in more than one county as long as the murders are connected in their commission. This bill would alleviate the fiscal burden of redundant trials and lessen the emotional strain on victims. [¶] Recent multiple-county murder defendants include 'The Freeway Killer' (William Bonin), 'The Night Stalker' (Richard Ramirez), and

"ambit"—to employ the term employed by the trial court—is so limited, as demonstrated by these other parts of the *Alcala* opinion:

"The People read section 790(b) as allowing a single joint trial of intercounty murder charges accompanied by a multiple-murder special-circumstance allegation so long as one substantive condition is met: 'the charged murders are "connected together in their commission," as that phrase is used in Section 954.' Petitioner, however, divines in section 790(b) another, and preliminary, substantive condition. Focusing on the phrase 'and for any crimes *properly joinable* with that murder,' (italics added) he asserts the statute should be read to require not only that joined murder charges be ' "connected together in their commission," as that phrase is used in Section 954,' but also that the murders each be '*part of a common plan or scheme.*' (Italics added.)

". . . [W]e agree with the People's construction of the statute. By its terms, section 790(b) specifies that jurisdiction for the trial of any charged murder shall lie in any county that has jurisdiction 'pursuant to subdivision (a) [of section 790] for one or more of the murders charged in a single complaint or indictment *as long as* the charged murders are "connected together in their commission," as that phrase is used in Section 954.' . . . [W]e reject petitioner's competing interpretation, because we find it more reasonable to construe the statute's 'properly joinable' language as merely providing that, with respect to the charged murders, any *other* crimes (such as rape, kidnapping, etc.) that are 'properly joinable' with a given murder charge *also* may be charged and tried along with that murder. We do not read the statute as imposing any substantive requirement other than that the charged murders be ' "connected together in their commission," as that phrase is used in Section 954.' (§ 790(b).)

"Although petitioner cites no decision supporting his view that the statute also requires that the joined murders be 'part of a common plan or scheme,' he asserts the statute's legislative history supports his interpretation. . . . [W]e disagree and find instead that these materials both (1) confirm the People's construction and (2) clarify that the Legislature intended a very broad test for joinder in employing the language " 'connected together in their commission," as that phrase is used in Section 954.' " (*Alcala, supra,* 43 Cal.4th 1205, 1216–1217.)

---

'The Trailside Killer' (David Carpenter)." ' (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 469 (1997–1998 Reg. Sess.) as amended June 17, 1998, pp. 1–2.)" (*Alcala, supra,* 43 Cal.4th 1205, 1215.)

After examining the legislative history of section 790(b), the court held that it "provides no support for petitioner's argument that we should read section 790(b) as requiring . . . that the charged murders be 'properly joinable' *with each other* in some manner beyond the requirement that they be connected together in their commission. Nor do we discern in the language or history of the statute any legislative intent to require that that joined murders be part of a common plan or scheme." (*Alcala, supra*, 43 Cal.4th 1205, 1218–1219.) All that is required is that there exist some " 'common element of substantial importance in their commission.' " (*Id.*, at p. 1219, quoting *People v. Scott* (1944) 24 Cal.2d 774, 778–779 [151 P.2d 517].)

■ Apparently because of the footnote in *Alcala* quoted above, the parties here devote a great deal of attention in their briefs to whether section 790(b) applies only to serial killers and whether defendant qualifies as one. We decline to enter this thicket, as we believe it has already been covered by the Supreme Court's analysis in *Alcala*, which makes no substantive reference to serial killers. To the contrary, the court succinctly held that "We do not read the statute as imposing any substantive requirement other than that the charged murders be ' "connected together in their commission," as that phrase is used in Section 954.' (§ 790(b).)" (*Alcala, supra*, 43 Cal.4th 1205, 1216.)

Beyond that, two points about *Alcala* deserve brief mention. First, in the excerpt quoted above, the Supreme Court clearly indicated that joinder was not limited to murders, but could also include any other crimes that also "may be charged and tried." (*Alcala, supra*, 43 Cal.4th 1205, 1216.) Second, the court made favorable reference to *People v. Kemp* (1961) 55 Cal.2d 458 [11 Cal.Rptr. 361, 359 P.2d 913], which involved crimes occurring over a period of more than two years. (*Alcala, supra*, at p. 1219.) Not only is that timeframe very similar to the one here, it also substantially deflates the notion that section 790(b) is limited to "serial killers" or "brutal killer rampages."

The parties also differ as to the correct standard of review. *Alcala* involved the denial of a defense motion under section 790(b), which the court treated as the denial of a motion to sever, and which is reversed only for a clear showing that discretion was abused. (See *Alcala, supra*, 43 Cal.4th 1205, 1220.) The district attorney, relying on *Alcala*, treats the trial court's ruling as reviewable under the abuse of discretion standard. On the other hand, defendant treats the matter as largely governed by the substantial evidence test.

Defendant is correct that substantial evidence is traditionally used to evaluate rulings on motions brought pursuant to section 995, the method

employed by defendant here. But defendant misapprehends how the substantial evidence rule is applied in the context of a section 995 motion. It is not whether substantial evidence supports the trial court's ruling on the motion, but whether substantial evidence supports the decision of the magistrate—or, in this case, the grand jury—holding defendant to answer the charges. Only the magistrate, or, again, the grand jury, is permitted to weigh the evidence or judge credibility, and all presumptions on appeal are in favor of that decision. (E.g., *People v. San Nicolas* (2004) 34 Cal.4th 614, 654 [21 Cal.Rptr.3d 612, 101 P.3d 509]; *People v. Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278]; *Rideout v. Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197].) Although the point not may be consequential, given that ordinarily "[t]he practical difference between the two standards of review are not significant" (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351 [93 Cal.Rptr.2d 644]), we think it prudent to follow *Alcala*, because it addresses the more precise legal issue presented. (See *People v. Soper* (2009) 45 Cal.4th 759, 774 [89 Cal.Rptr.3d 188, 200 P.3d 816] [abuse of discretion standard used to determine whether a trial court erred "in declining to sever properly joined charges"].)

Applying *Alcala*, we conclude the trial court did abuse its discretion. It is clear that the court was acting under a misapprehension of the scope of section 790(b), believing that its application is restricted to "serial killers who go on . . . brutal killing rampages across county lines." That misapprehension establishes an abuse of discretion. (E.g., *Koon v. United States* (1996) 518 U.S. 81, 100 [135 L.Ed.2d 392, 116 S.Ct. 2035]; *People v. Jennings* (2005) 128 Cal.App.4th 42, 49 [26 Cal.Rptr.3d 709].)

The *Alcala* court noted that similarity of victims, motivation, and method of killing each qualifies as a " 'common element of substantial importance.' " (*Alcala, supra,* 43 Cal.4th 1205, 1219–1220.) All three are present here. The grand jury had evidence that both victims were infants, smothered to death because defendant could not deal with their crying. Indeed, defendant herself described both killings as involving the "same situation." That evidence is more than ample to support the grand jury's implicit finding of a " 'common element of substantial importance' " (*ibid.*), and that is sufficient to defeat a motion under section 995. (*People v. San Nicolas, supra,* 34 Cal.4th 614, 654; *Rideout v. Superior Court, supra,* 67 Cal.2d 471, 474.)

## DISPOSITION

The order setting aside the grand jury's allegation pursuant to section 790(b) is reversed.

Kline, P. J., and Lambden, J., concurred.